## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Joseph A. Dickson |
| v. | : | Mag. No. 16-6561 |
| DAVID ALVEY | : | **CRIMINAL COMPLAINT** |

I, Jenny Walenta, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the U.S. Department of Veterans Affairs, Office of Inspector General, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

Continued on the attached page and made a part hereof:

Special Agent Jenny Walenta
U.S. Department of Veterans Affairs
Office of Inspector General

Sworn to before me and subscribed in my presence,
April 20, 2016 in Essex County, New Jersey

HONORABLE JOSEPH A. DICKSON
UNITED STATES MAGISTRATE JUDGE          Signature of Judicial Officer

## **ATTACHMENT A**

From at least as early as in or about November 2009 through in or about August 2013, in the District of New Jersey and elsewhere, the defendant

DAVID ALVEY

did knowingly and intentionally conspire and agree with others to devise a scheme and artifice to defraud the United States, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

**ATTACHMENT B**

I, Jenny Walenta, am a Special Agent with the U.S. Department of Veterans Affairs ("VA"), Office of Inspector General. I have knowledge of the facts set forth below from my involvement in the investigation, my review of reports, documents, pictures, videos, witness interviews, discussions with other law enforcement officials, and my training and experience. This affidavit is submitted for a limited purpose, and I have not set forth each and every fact that I know concerning this investigation. All statements described herein are relayed in substance and in part.

### Overview of the Conspiracy

1.  From at least as early as in or about November 2009 through in or about August 2013, defendant DAVID ALVEY ("ALVEY") and others engaged in a conspiracy to defraud the United States by obtaining tuition assistance and other education-related benefits under a federal program designed to help veterans who served in the United States Armed Forces after September 11, 2001 on the basis of false and fraudulent pretenses, representations, and promises. Over the course of the conspiracy, ALVEY, operating largely through his own company, ED4MIL, LLC ("ED4MIL"), and others, caused the United States to approve and pay out tuition and other benefits for several online non-credit training and certification courses. These courses were purportedly developed, taught, and administered by the faculty at a private university located in New Jersey ("University"), but were actually developed, taught, and administered by undisclosed and unapproved sub-contractors of ED4MIL. Indeed, while the veterans were nominally enrolled at the University, ALVEY and others actually enrolled the veterans in online correspondence courses developed and administered by an unapproved online correspondence school located in Pennsylvania ("Correspondence School"). ALVEY and his co-conspirators obtained approval for the courses from the VA and induced thousands of veterans to enroll in the courses by concealing the true nature of the courses and the contract relationships between the University and ED4MIL and the sub-contract between ED4MIL and the Correspondence School. Over the course of the conspiracy, ALVEY and his co-conspirators caused the United States to pay out over approximately $35 million in total benefits.

### Relevant Individuals and Entities

2.  At all times relevant to this Complaint:

    a.  Defendant DAVID ALVEY was the co-owner, founder, and President of ED4MIL, a private for-profit business headquartered in Lewisberry,

1

Pennsylvania. ALVEY resided in Harrisburg, Pennsylvania.

      b.    "Co-Conspirator #1" was an employee of ED4MIL.

      c.    "Co-Conspirator #2" worked at the University and ED4MIL at various times relevant to the Complaint. Between at least as early as November 2009 and in or about April 2013, Co-Conspirator #1 was an associate dean at the University. Beginning in or about April 2013 through in or about August 2013, Co-Conspirator #1 resigned from the University and began working at ED4MIL.

      d.    "Co-Conspirator #3" was an employee at the University.

      e.    The University was a liberal arts university located in New Jersey that receives federal funds from the U.S. Department of Education.

### The Post 9/11 GI Bill

      3.    Under the Post 9/11 GI Bill, the United States provides educational assistance to eligible veterans of the United States Armed Forces by paying for veterans' tuition, housing costs, and other educational costs and fees for certain qualified educational courses. The Post 9/11 GI Bill applies to individuals who entered into military service or actively served in the military after September 11, 2001, and was designed, in part, to aid veterans returning from the wars in Iraq and Afghanistan following the terrorist attacks on September 11, 2001. The Post 9/11 GI Bill is administered by the VA.

      4.    The amount and type of benefits to which a veteran may be entitled depends, in part, on the type of educational institution offering the course, the nature of the course being offered, and the manner in which the course is administered. Thus, whether the veteran is enrolled in a degree or non-degree program, and whether the veteran is taking the course in-person, online, or through some other method, is important in determining the amount and type of benefits to which a particular veteran is entitled.

      5.    Before the United States will pay out any benefits under the Post 9/11 GI Bill, an educational institution must first submit the course or educational program for approval to the VA in order to ensure that the course is approved for and eligible for assistance under the statute. The school's application describing the course or educational program is generally submitted to a VA agent or official in the state where the educational institution is located ("VA Approving Agent"). The statements in the application must be certified as true and correct by an official of the school. Importantly,

any contractors used by the school in providing the courses must be disclosed to the VA in order to permit the VA Approving Agent to properly assess eligibility for benefits under the requirements of the Post 9/11 GI Bill.

6. Once approved by the VA Approving Agent, the school may begin enrolling eligible veterans. Tuition benefits under the Post 9/11 GI Bill are paid by the United States directly to the school. Housing stipends and other education-related costs are paid directly to the veteran.

### The Fraudulent Application

7. At least as early as in or about December 2007, ALVEY began seeking out educational institutions in need of revenue with which to partner on educational programs. The training courses that ALVEY proposed were targeted to active duty military service members and veterans who could use various federal benefit programs to pay for the courses.

8. In order to gain knowledge about the various approvals for and requirements of the federal benefits programs available to the military, ALVEY, Co-Conspirator #1, and others consulted knowledgeable individuals, including a VA Approving Agent in Pennsylvania. Through these communications, ALVEY and Co-Conspirator #1 learned, as early as in or about December 2007, that in order to conduct courses that would be eligible for federal benefits, an entity needed to be a registered school with the Department of Education for that state for at least two years, and thereafter, needed to be separately approved by the VA Approving Agent. ALVEY and Co-Conspirator #1 also learned, as early as in or about June 2008, that to be eligible for benefits, a course needed to actually be taught by instructors who were employed by the approved school. In other words, this VA Approving Agent in Pennsylvania told ALVEY, in sum and substance, that courses administered through contractors generally would not be approved for educational benefits for military service members and veterans.

9. Indeed, ALVEY was aware that in order to obtain federal education benefits for programs involving contractors such as ED4MIL and the Correspondence School, the contractors needed to be disclosed to and separately approved by the VA Approving Agent. These rules were discussed amongst ALVEY, Co-Conspirator #1, Co-Conspirator #2, Co-Conspirator #3, and others on multiple occasions.

10. Notwithstanding their extensive understanding of the applicable rules and necessary disclosures, ALVEY proposed to Co-Conspirator #2, as early as on or about November 9, 2009, an online non-credit "GI Bill Program"

that would be offered through the University, but taught and administered by the Correspondence School and other private entities contracted by ALVEY. ALVEY pitched the program as a potential source of significant revenue for the University. The University, through Co-Conspirator #2, agreed to the arrangement with Alvey, and the University and ED4MIL entered into a contract describing their arrangement.

11. Over the course of the next several months, ALVEY and Co-Conspirator #2, among others, worked to obtain approval for the online non-credit courses. Throughout their communications with a VA Approving Agent in New Jersey between in or about April 2010 and in or about February 2011, ALVEY and Co-Conspirator #2 concealed the true nature of the courses from the VA, and never disclosed the existence or involvement of either ED4MIL or the Correspondence School with the online non-credit courses. In one email on or about May 18, 2010, in response to certain of the VA Approving Agent's questions about the courses, Co-Conspirator #2 wrote to Alvey, "I am sure [Co-Conspirator #1] could have [given the VA Approving Agent] a song and dance and made a good answer up."

12. The approval process culminated with the University's submission, on or about February 4, 2011, of its Application for Veterans Training Approval of Distance Education Programs ("Application"), to the VA Approving Agent. The Application, which Co-Conspirator #1 drafted and signed, and which ALVEY reviewed and consulted on, was submitted to the VA Approving Agent to gain approval for the online non-credit courses offered and administered by the Correspondence School and other ED4MIL sub-contractors. In order to gain approval for the courses, the University falsely represented that the courses were developed, taught, and administered by the University's faculty, and purposefully omitted any mention of ED4MIL, the Correspondence School, or any other contracted entity. Specifically, the Application falsely stated, among other things:

    a. "Courses in the . . . distance learning programs are mainly taught by full time faculty and experienced adjuncts who may also teach on campus. Students in the program have the opportunity to interact with faculty regularly through email, in person and telephone communication. Courses are developed with knowledge of the Quality Matters Rubric that requires student/faculty engagement."

    b. "The majority of the faculty teaching in the Distance Learning Program also teach on campus and have been participating in various trainings over the years."

      c.      "Students enrolled in the . . . Distance Learning Program are enrolled in the same major programs as students on campus and quite often are taught by the same faculty."

      d.      "During the faculty interview process the various programs and course modalities are discussed with the prospective professor . . . . The faculty member is assigned to teach in the Distance Learning Program by the department chair/dean."

      e.      "Courses offered through the Distance Learning Program are the same as those courses offered on campus with the same learning outcomes."

13. As referenced above, contrary to the statements in the Application, the University's faculty had no involvement whatsoever with the online non-credit courses offered by the University in partnership with ED4MIL. In fact, at ALVEY's behest, the courses were developed and administered by, and veterans were actually enrolled in, the Correspondence School.

14. On or about February 24, 2011, the VA Approving Agent approved the Application. In approving the University's online non-credit courses, the VA Approving Agent relied upon the false representations in the Application and in various other communications with Co-Conspirator #1. Had the VA Approving Agent been aware of the true nature of the courses, including the involvement of various contractors such as ED4MIL and the Correspondence School, the University's online non-credit courses would not have been approved for benefits under the Post 9/11 GI Bill.

**Fraudulent Marketing of the The University Courses,
And the Gross Over-Charging of Tuition**

15. Following approval of the Application, ALVEY and his co-conspirators at ED4MIL developed marketing materials and a script to be used by ED4MIL salespersons at various military bases around the United States in order to market to and enroll veterans in the courses. From at least as early as on or about February 24, 2011 through in or about August 2013, "Field Representatives" employed by ED4MIL traveled across the United States pitching the online non-credit courses to veterans using the marketing materials and script developed by ALVEY and others at ED4MIL. Field Representatives were instructed to identify themselves to veterans as employees of the University, and were specifically told not to mention ED4MIL

or the Correspondence School. The marketing materials were emblazoned with the University's insignia, and the Field Representatives wore t-shirts and handed out pens bearing the University's name. The Field Representatives offered the veterans free gift cards, laptops, and other benefits for enrolling in the courses. The veterans were promised that there would be no "out-of-pocket" costs to them, regardless of the scope of their eligibility for benefits under the Post 9/11 GI Bill. The Field Representatives, and several other employees at ED4MIL, were given University email addresses with which to communicate with the veterans who agreed to enroll in the courses.

16.   If a veteran agreed to enroll in one of the University's online non-credit courses, an ED4MIL employee, often Co-Conspirator #1, provided their information to an employee at the University, usually Co-Conspirator #3, so that the veteran could be nominally "enrolled" at the University. Simultaneously, the veteran was enrolled in the Correspondence School, which actually taught and administered the online courses. The veterans were never informed of ED4MIL or the Correspondence School, and were enrolled in the Correspondence School without their knowledge.

17.   Even though the veterans were enrolled in the Correspondence School, and the University added no content or value to the courses whatsoever, the University charged the Post 9/11 GI Bill between ten and thirty times the prices charged by the Correspondence School for the same courses. Indeed, while most courses at the Correspondence School cost between approximately $600 and $1,000 in tuition, the University charged between approximately $5,000 and $26,000 per course.

18.   A small handful of veterans who enrolled in the University's online non-credit courses discovered the involvement of the Correspondence School and complained to the VA. For example, on or about December 14, 2011, a veteran telephoned Co-Conspirator #1 to complain about the course in which he was enrolled. Co-Conspirator #1 discussed the complaint with Co-Conspirator #3, who then relayed the complaint in an email to Co-Conspirator #2 as follows:

> The on-line course is the same as [the Correspondence School] and nowhere on our literature is it indicated that it is a [Correspondence School] course. [The veteran] feels it is fraud since [Correspondence School] charges $749.00 for the course and we are charging over $8000 . . . [Co-Conspirator #1] has spoken to the student and I have as well, explaining about value added etc. . . . He believes it is fraud and has phoned the VA offices in

6

> Newark, Buffalo and Philadelphia as well as the Inspector General's Office. He said they will start some form of investigation.

19. In response to this and other similar complaints, ALVEY, Co-Conspirator #2, Co-Conspirator #3, and others redoubled their efforts to conceal the Correspondence School and their gross "mark-up" of tuition from the veterans and the VA. Specifically, on or about December 22, 2011, Co-Conspirator #3 emailed ALVEY, stating:

> As you are aware, there is a question concerning the relationship with [Correspondence School]. Although there is a generic landing page when students open the course, just about any page you open has [Correspondence School's] name on it . . . . Can you please contact [Correspondence School] to work out an arrangement so that their name does not appear on the courses for our students, and most importantly, ask them to remove any mention of the price for these courses. Once you have the opportunity to speak with them please update me on the status. I hope the issue that was raised by that one student does not prompt a contact or audit by the VA of these programs.

That same day, ALVEY responded, in part, "we will, at your direction insist that our vendors remove their logo from the courses[.]"

## Conclusion

20. Between in or about February 2011, when the University's online non-credit courses in partnership with ED4MIL were approved by the VA, through in or about August 2013, ALVEY and his co-conspirators caused the United States to pay out over approximately $35 million in tuition and other education-related benefits for thousands of veterans under the Post 9/11 GI Bill.

21. At all times relevant to this Complaint, email communications sent from ED4MIL employees originated in ED4MIL headquarters in Pennsylvania, and accessed a third party email provider's network servers located in Georgia. The University maintained its own network servers located in The University, New Jersey. Accordingly, email communications in furtherance of the conspiracy involved interstate wire transmissions.